**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BRUCE COPELAND,** § | | |
| Plaintiff, § | | |
| § | | |
| vs. § | | No. 3:13-CV-4432-N-BH |
| § | | |
| **D & CONSTRUCTION LLC, et al.,** § | | |
| Defendants. § | | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order No. 3-251, this *pro se* case has been automatically referred for pretrial management, including the determination of non-dispositive motions and the issuance of findings, conclusions, and recommendations on dispositive motions. Before the Court for recommendation is *Defendant's [sic] Motion to Exclude/Dismiss Individual Natural Persons of L.L.C. from Litigation*, filed April 1, 2014 (doc. 32). Based on the relevant filings, evidence, and applicable law, the defendants' motion to dismiss should be **GRANTED in part**.

**I. BACKGROUND**

On November 5, 2013, Bruce Copeland (Plaintiff), filed a suit against D & J Construction, LLC (D & J LLC), Johnny Gray III, Darrell Gray, and Ethel Yolanda Gray, alleging claims for slander, libel, usury, intentional infliction of emotional distress, breach of implied contract, breach of fiduciary duty, sworn account, quantum meruit, unjust enrichment, and intentional interference with prospective economic advantage. (Doc. 3 at 1-2, 6-10.) Plaintiff contends that diversity jurisdiction exists because he is a resident of the State of Oklahoma, and the defendants are residents of the State of Texas. (*Id.* at 1-2.)

In March 2013, Plaintiff agreed to work for the defendants to "assist them with the restructuring of their entire office procedures and management structure[,]" and with research and

preparing documents in legal matters. (*Id*. at 2.) He agreed to work without pay for 60 days. (*Id*.) The defendants agreed to pay him "a flat salary of $3,000 per month on a part time basis and 10% of all sales [that he] assisted [them] with obtaining contractors on." (*Id.*) In July 2013, Plaintiff "created [a] sales opportunity" for the defendants and obtained a contract for their services. (*Id.* at 3.) In August 2013, Plaintiff became the office manager of D & J LLC, with the agreement that he would continue to be paid as before. (*Id.* at 2.) In September 2013, the client from whom Plaintiff had obtained a contract for the defendants requested additional work, and he agreed to handle the entire contract for the defendants so they could keep and fulfill the contract. (*Id.* at 3-5.) In exchange, the defendants agreed to split the proceeds of the project with him 50/50. (*Id*. at 4-5.) When that project was completed, however, the defendants refused to pay him for it as well as for his sales assistance on another project. (*Id.* at 5.) Plaintiff resigned his position with the defendants in writing and sent them a final invoice. (*Id.*) The defendants then began a campaign to malign his name and reputation to their clients and vendors. (*Id.* at 5-6.)

On April 1, 2014, the defendants moved to dismiss the individual defendants from the suit. (Doc. 32.) Plaintiff filed a response (doc. 39), and the defendants filed a reply (doc. 42).[1]

## II. ANALYSIS

The defendants contend that the individual defendants should be "excluded and/or dismissed" because all of Plaintiff's claims relate to D & J LLC, and they are protected from individual liability under the Texas Business Organizations Code §§ 101.113 and 101.114. (Doc. 32.)

---

[1] On June 2, 2014, Plaintiff filed a first amended complaint that is virtually identical to the original complaint, except that it adds three new defendants, D & JG Construction, LLC, D & J Lancaster, and Preferred Contractors Insurance Company Risk Retention Group, LLC. (Doc. 45 at 2.) Because the two complaints are virtually identical, the motion to dismiss the original complaint is considered as to the first amended complaint.

A.      **Procedural Basis for Motion**

The defendants' motion does not identify the procedural basis for their request to dismiss the claims against the individual defendants, citing only to the Texas Business Organizations Code.

In this diversity case, the majority of the events giving rise to the claims are alleged to have occurred in Texas, and the parties do not dispute that Texas law applies. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)) ("[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."). "It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417, (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).

The defendants appear to contend that Plaintiff cannot state a cause of action against them individually, implicating Rule 12(b)(6) of the Federal Rules of Civil Procedure. One federal district court has considered a motion to dismiss based on the Texas Business Organizations Code under Rule 12(b)(6). *See Deniece Design, LLC v. Braun*, 953 F. Supp.2d 765, 777-78 (S.D. Tex. 2013) (considering motion to dismiss claims against individual based on Tex. Bus. Orgs. Code Ann. § 101.113 under Fed. R. Civ. P. 12(b)(6)). Because the defendants filed their answer to Plaintiff's complaint well before their motion to dismiss, Rule 12(b)(6) appears inapplicable, however. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").

Like Rule 12(b)(6), Rule 12(c) provides a means "to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance

3

of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir.2002) (citation omitted). Unlike a motion under Rule 12(b)(6), however, a party may file a motion under Rule 12(c) "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The defendants' motion is therefore construed as arising under Rule 12(c).

**B.      Applicable Standard**

The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir.2007). Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The plaintiff's pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation marks omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained

4

in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

### C. Texas Business Organizations Code

The defendants contend that as members and managers of a Texas limited liability company, they may not be held liable for D & J LLC's debts, obligations or liabilities under the Texas Business Organizations Code §§ 101.114 and 101.113. (Doc. 32 at 1-2.)

Section 101.114 of the Texas Business Organizations Code (TBOC) states: "Except as and to the extent the company agreement specifically provides otherwise, a member or manager is *not liable* for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court." Tex. Bus. Orgs. Code Ann. § 101.114 (Vernon 2006) (emphasis added); *see also McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590 (Tex. App.–Houston [1st Dist.] 2007, pet. denied). Section 101.113 states that "[a] member of a limited liability company may be named as a party in an action by or against the limited liability

5

company *only if* the action is brought to enforce the member's right against or liability to the company." *Id.* at § 101.113 (emphasis added).

### 1. *Corporate Veil Doctrine*

In his response, Plaintiff alleges for the first time that the individual defendants may be held liable under the corporate veil doctrine because D & J LLC is the alter ego of one of the individual defendants, and the defendants are operating a sham and committing fraud upon the public. (*See* doc. 39 at 2, 6-7.)

Because of the limited liability offered by corporations and limited liability companies, "a plaintiff seeking to impose individual liability on an owner must 'pierce the corporate veil.'" *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013) (applying Texas law); *see also In re Williams*, No. 09-52514, 2011 WL 240466, at *3 (Bankr. W.D. Tex. Jan. 24, 2011) (an LLC member may only be held liable for the LLC's breach of contract under traditional veil piercing laws).[2] In Texas, the corporate veil may be pierced where "(1) the [LLC] is the alter ego of its owners and/or shareholders; (2) the [LLC] is used for illegal purposes; and (3) the [LLC] is used as a sham to perpetrate a fraud." *Rimade Ltd. v. Hubbard Enters.*, 388 F.3d 138, 143 (5th Cir. 2004).

The traditional alter ego doctrine was changed substantially by the codification of the doctrine in § 21.223 of the TBOC. *See Martin v. U.S. Merch. Fin. Grp.*, No. 05-13-00999-CV, 2014 WL 6871392, at *4 (Tex. App.–Dallas Dec. 8, 2014, no pet.) (mem. op.). Section 21.223 states, in relevant part:

> (a) A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder,

---

[2] "Texas courts have applied the statutory veil piercing laws applicable to corporations to limited liability companies." *In re Williams*, 2011 WL 240466, at *3.

6

>owner, or subscriber or of the corporation, may not be held liable to the corporation or its obligees with respect to:
>
>> . . .
>>
>> (2) *any contractual obligation of the corporation* or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory; or
>>
>> (3) any obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality . . .
>
>. . .
>
>(b) Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the *purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate.*

Tex. Bus. Orgs. Code Ann. § 21.223 (emphasis added). In cases involving an LLC's contractual obligations, therefore, "alter ego or other similar theories may be used to pierce the corporate veil *only if* (1) actual fraud is shown, and (2) it was perpetrated primarily for the direct personal benefit of the holder." *In re Ritz*, 513 B.R. 510, 522 (S.D. Tex. 2014) (emphasis original); *see* Tex. Bus. Orgs. Code Ann. § 21.223.

      **a.    Actual Fraud**

"To prove actual fraud [to pierce the corporate veil]. . . the plaintiff must prove dishonesty of purpose or intent to deceive." *Allied Chem. Carriers, Inc. v. Nat'l Biofuels LP*, No. H-10-1109, 2011 WL 2672512, at *3 (S.D. Tex. July 7, 2011). Further, "the actual fraud must have related specifically to the contract at issue." *Id.*

Liberally construing Plaintiff's new allegations in his response as an amendment to the

complaint,[3] he has sufficiently alleged facts to support a finding of actual fraud for purposes of piercing the corporate veil.[4] He asserts generally that *all* of the individual defendants' "business model is to receive payment for [the] work done but refuse to pay the workers who actually did the work." (Doc. 39 at 7 ("The basis of plaintiff's complaint against the individual defendants is for the purpose of fraud.").) Because Plaintiff also alleges that the individual defendants agreed to hire Plaintiff for specific tasks on behalf of D & J LLC and then refused to pay him, (doc. 3 at 2-5), he pleads sufficient facts showing that the individual defendants had intent to deceive him, showing actual fraud.

### b. Direct Personal Benefit

Plaintiff also sufficiently alleges that Johnny Gray III reaped personal benefit: he alleges that Johnny Gray III is the sole member of D & J LLC and uses the debit cards of the business for his personal expenses. (Doc. 39 at 7); *see JNS Aviation, Inc. v. Nick Corp.*, 418 B.R. 898, 908 (N.D.

---

[3] Plaintiff's new allegations in his response are not part of the pleadings to be considered for purposes of the motion to dismiss. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, * 4 n. 3 (N.D. Tex. Aug. 15, 2014); *see also Renfrow*, 2012 WL 3582752, at*4 (finding plaintiffs' allegations were insufficient for the court to determine whether equitable tolling was warranted where they raised equitable tolling for the first time in their response to the defendant's motion to dismiss); *Cutrera v. Board of Supervisors,* 429 F.3d 108, 113 (5th Cir.2005) (explaining that a claim raised for the first time in a response to a motion for summary judgment is not properly before the court); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court), citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990). He has not sought or been granted leave to amend his complaint to add these allegations, and he has not shown that the defendants consented to an amendment. *See* Fed. R. Civ. P. 15(a)(2). Nevertheless, the *pro se* response may be liberally construed as a request for leave to amend his complaint. *See Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir.1992) (deciding that a response to a motion to dismiss, in which plaintiff first alleged that she had been willfully discriminated against, should be treated as a motion to amend her pleadings).

[4] The defendants argue that the corporate veil cannot be pierced here because Plaintiff failed to plead a fraud claim. (Doc. 42 at 1-3.) Plaintiff attempted to add a fraud claim in his second amended complaint, but it was stricken because he had already amended once as a matter of course, and he failed to first seek leave of court to amend. (Docs. 40, 41.) "In the context of piercing the corporate veil, actual fraud is not equivalent to the tort of fraud[,]" however. *Martin v. U.S. Merchants Fin. Grp., Inc.*, No. 05-13-00999-CV, 2014 WL 6871392 at *5 (Tex. App.–Dallas Dec. 8, 2014, no pet.); *Ogbonna*, 2014 WL 2592097 at *8. The failure to plead a fraud claim is therefore not fatal to Plaintiff's alter ego claim.

Tex. 2009) (quoting *In re JNS Aviation, LLC*, 376 B.R. 500, 531 (Bankr. N.D. Tex. 2007)) (noting that the sole owners of a company "had to be acting in their own best interests. They were not looking to protect an entity or any other shareholders. No other shareholders (members) existed. They had no other interest to serve.").[5] (*Id.* at 7.) Moreover, Plaintiff has alleged that Johnny Gray III perpetrates fraud by hiring workers and refusing to pay them once the work is completed. (*Id.*) He also contends that as the sole member of D & J LLC, Johnny Gray III did not obtain the required liability insurance for D & J LLC, and the lack of formality is an additional evidence that D & J LLC was a mere front for Johnny Gray III to perpetuate the fraud. (*Id.* at 6.) Liberally construing Plaintiff's assertions in his favor as required under a Rule 12(b)(6) analysis, he has sufficiently alleged actual fraud and that Johnny Gray III used D & J LLC to perpetrate the fraud to allow piercing D & J LLC's corporate veil.

Plaintiff, however, provides no facts showing that Darrel Gray and Ethel Yolanda Gray perpetrated the fraud for the *direct benefit* to themselves. He has not alleged that Darrell Gray or Ethel Yolanda Gray used D & J LLC's resources for personal gain, or that they are members of it. Rather, Plaintiff concedes that D & J LLC is a sole member limited liability company and that its sole member is Johnny Gray III. (Doc. 39 at 7.) He also alleges generally that the individual defendants filed "[three] separate business entities at the same address" with different cities and municipalities without proper liability insurance "for the purpose of evading suits, judgments, garnishments, and liens[,]" and that the defendants are committing "fraud upon the public[,]" but he has not alleged any facts showing that D & G LLC is an alter ego of Darrell Gray or Ethel

---

[5] Plaintiff also claims that Johnny Gray III has been "personally accepting liability and responsibility" for D & J LLC's actions. (Doc. 3 at 7.)

Yolanda Gray to pierce the corporate veil. (*See id.* at 6-7.)

In conclusion, the motion to dismiss any contractual claims against Johnny Gray III pursuant to the TBOC Code should be **DENIED**.[6] The motion to dismiss any contractual claims against Darrell Gray and Ethel Yolanda Gray should be **GRANTED**.

### *2. Tort claims*

In addition to his contract claims, Plaintiff's complaint also alleges claims for slander, libel, intentional infliction of emotional distress, and intentional interference with prospective economic advantage. (Doc. 3 at 6-10.) He claims that the individual defendants made defamatory statements about him during telephone calls and in text messages. (*Id.* at 5-7).

"[A]n agent [of a limited liability company] is personally liable for his own fraudulent or tortious acts, even when acting within the course and scope of his employment." *Dagel*, 2012 WL 2068727, at *5 (internal quotation marks omitted); *see Leyendecker & Assoc., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984) ("A corporation's employee is personally liable for tortious acts which he directs or participates in during his employment."); *Walker v. Anderson*, 232 S.W.3d 899, 918 (Tex. App.–Dallas 2007, no pet.). As long as the corporate officer "knowingly participated in the wrongdoing[,]" the plaintiff is not required "to pierce the corporate veil in order to impose personal liability." *In re Williams*, 2011 WL 240466, at *1 (quoting *Kingston v. Helm*, 82 S.W.3d 755, 758

---

[6] Six of Plaintiff's ten claims relate to the defendants' failure to pay him based on a verbal agreement: usury, breach of implied contract, breach of fiduciary duty, sworn account, quantum meruit, unjust enrichment. (Doc. 3 at 6-10.) some of the. (*See* doc. 3.) The basis of Plaintiff's usury and sworn account claims is his allegation that the defendants failed to pay all of his expenses as agreed by the contract. (*Id.* at 7.) For his breach of implied contract, quantum meruit, and unjust enrichment claims, he contends that the defendants failed to pay him for his services as agreed in their verbal agreement. (*Id.* at 9-10.) Additionally, although a breach of fiduciary duty claim is a tort claim, *see Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 318 (Tex. App.–Tyler 1985, no writ), Plaintiff contends that the defendants failed to pay him as agreed in the contract, so § 21.223 may protect the individual defendants from liability. (*Id.* at 8-9); *see In re Antone's Records, Inc.*, 445 B.R. 758, 788 (Bankr. W.D. Tex. 2011) (applying § 21.223 to the related breach of fiduciary relationship claim).

(Tex. App.–Corpus Christi 2002, pet. denied)); *Walker*, 232 S.W.3d at 918. Further, "it is well settled [in Texas] that a corporate agent or officer may be held personally liable for fraudulent statements or knowing misrepresentations, even when the statements or representations are made in his capacity as a corporate representative." *Camac v. Dontos*, 390 S.W.3d 398, 411 (Tex. App.–Dallas 2012, no pet.). The TBOC supports distinguishing tort suits from contract suits when finding personal liability of a corporate officer. *See In re Williams*, 2011 WL 240466 at *3. Section 101.114 limits a corporate agent's liability to "the corporation's *breach of contract* under traditional veil piercing laws[]" and § 21.223 requires additional showing of actual fraud to pierce the corporate veil. *Id.* (emphasis added). These sections "support the conclusion that, in cases of misrepresentation or fraud (as opposed to simple breach of contract), a corporate agent may be held personally liable for his own misrepresentations." *Id.*

Here, Plaintiff alleges that after the defendants had refused to pay him, he and the individual defendants "engage[d] in a 'text' war of words[.]" (Doc. 3 at 5.) Plaintiff asserts that the individual defendants made defamatory statements both in oral and written form. (*Id.* at 6-7.) He also "received calls from current clients and vendors that they had received calls from [the individual defendants] defaming [Plaintiff's] name and reputation[.]" (*Id.* at 5.) The individual defendants called him a fraud and falsely claimed that they were going to file a claim with the Dallas district attorney's office. (*Id.* at 5-6.) They "sent phony notices and request to the 'District Attorney's' office in hopes of frightening Plaintiff." (*Id.* at 7.) The individual defendants also contacted "all potential vendors that may seek to do business with [Plaintiff]" to interfere with any possible future "working relationships." (*Id.* at 10.) The alleged statements made by the individual defendants are intentional tortious acts akin to "fraudulent statements or knowing misrepresentations" that lead to

individual liability. *See In re Williams*, 2011 WL 240466, at *2; *Camac*, 390 S.W.3d at 411. Taking his pleaded facts as true and viewing them in the light most favorable to him, as the Court must, Plaintiff has sufficiently pled specific tortious actions by the individual defendants that may subject them to personal liability. *See Baker*, 75 F.3d at 196; *Dagel*, 2012 WL 2068727, at *6.[7]

### III. RECOMMENDATION

The defendants' motion to dismiss should be **GRANTED in part**, and Plaintiff's usury, breach of implied contract, sworn account, quantum meruit, unjust enrichment, and breach of fiduciary duty claims against Darrell Gray and Ethel Yolanda Gray should be **DISMISSED**. The motion to dismiss Plaintiff's usury, breach of implied contract, sworn account, quantum meruit, unjust enrichment and breach of fiduciary duty claims against Johnny Gray III, and the defamation, libel, intentional infliction of emotional distress, and intentional interference with prospective economic advantage claims against all individual defendants, should be **DENIED**, and these claims should be permitted to proceed.

**SO RECOMMENDED** on this 14th day of January, 2015.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7] The defendants also argue that Plaintiff's "repetitive[] duplication of [d]iscovery" shows that this suit will be a "voluminous litigation" if they are not "excluded from [the] suit." (Doc. 32 at 2.) They provide no authority for the proposition that a voluminous discovery process is a legal basis for dismissing the individual defendants.

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE